**STATE OF COLORADO, Plaintiff,**

v.

**UNITED STATES of America and Shell Oil Company, Defendants.**

**No. 83–C–2386.**

United States District Court, D. Colorado.

Nov. 17, 1994.

---

Casey Shpall, Jane T. Feldman, Mary Ramsay McCormick, Office of the Atty. Gen., Denver, CO, for plaintiff.

Bradley Bridgewater, U.S. Dept. of Justice, Robert H. Foster, Denver, CO, Major Lawrence Rouse, Army Environmental Law Div., Arlington, VA, William Pharo, Asst. U.S. Atty., Denver, CO, for defendant U.S.

Ed McGrath, Linnea Brown, Holme, Roberts & Owen, Denver, CO, for Shell Oil Co.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff, the State of Colorado, seeks to recover from the United States and Shell Oil Company (Shell) response costs incurred from January 1, 1989 through June 30, 1992, in connection with the Rocky Mountain Arsenal (RMA) cleanup and litigation. Cost reimbursement is sought pursuant to section 107 of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9607(a). Before trial to the court commenced on October 31, 1994, the plaintiff filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56, to which the defendants filed a response in opposition. Defendants also filed a motion for partial summary judgment with respect to the date on which interest begins to accrue, to which the plaintiff responded.

The issues raised by those motions have been fully briefed. Oral argument was heard on October 31, 1994, and November 2, 1994.

Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b).

## I. *THE DATE ON WHICH INTEREST ACCRUES.*

■ Section 9607(a)(4), 42 U.S.C., provides, in relevant part:

> The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned.

Plaintiff argues that it met the requirements of subsection (i) when it filed its complaint in December 1983. Thus, it contends that prejudgment interest began to accrue the date costs were incurred. Defendants assert that interest should accrue from August 10, 1992—the date the defendants received a demand letter from the plaintiff, seeking $4,531,340.77 for costs incurred between January 1, 1989 and April 30, 1992.

Plaintiff relies primarily on *In re Bell Petroleum Services, Inc.,* 3 F.3d 889 (5th Cir. 1993), in which the Fifth Circuit concluded that a complaint which did not specify an exact amount nonetheless constituted a written demand for payment sufficient to trigger the accrual of prejudgment interest. *Id.* at 908;[1] *see also Colorado v. Idarado Mining Co.,* 735 F.Supp. 368, 371 (D.Colo.1990). However, I am not persuaded by the authority cited. Subsection (i), 42 U.S.C. § 9607(a)(4), clearly requires a written demand for *specified* response costs. Thus, a majority of courts have concluded that the plaintiff must present the defendant a demand in the form of a dollar amount. *See, e.g., United States v. Hardage,* 750 F.Supp. 1460, 1505 (W.D.Okla.1990), *aff'd in part, rev'd in part,* 982 F.2d 1436 (10th Cir.1992);

*United States v. Northernaire Plating Co.,* 685 F.Supp. 1410, 1421 (W.D.Mich.1988).

The complaint that commenced this action in December 1983 sought "damages for injury to, destruction of and loss of natural resources," pursuant to 42 U.S.C. § 9607(f). It did not seek recovery of response costs pursuant to § 9607(a); thus, it did not demand a specified amount. The complaint was amended in 1985 and again in 1990. In those amended complaints the plaintiff did assert claims for response costs. Its prayer for relief on the response cost claims in these amended complaints read:

> On the third claim for relief, the State of Colorado seeks a judgment that defendants are jointly and severally and strictly liable to the plaintiff for all response costs, including, but not limited to monitoring, investigations, treatment and disposal of contaminated soils and water including ground waters, removal and remedial action or other necessary costs of response, incurred or to be incurred by the State of Colorado, not inconsistent with the national contingency plan, together with prejudgment and post judgment interest thereon;[2]

Thus, while the amended complaints sought response costs, they did not specify any amount. Accordingly, I find and conclude that neither of them constituted a written demand for a specified amount as required by subsection (i).

■ Plaintiff next argues that it demanded payment of a specified amount in a letter dated February 7, 1989, and that interest should begin to accrue from the latter of that date or the date on which the costs were accrued. The United States agrees. Shell, however, contends that prejudgment interest for response costs incurred between January 1, 1989 and June 30, 1992 cannot begin to accrue until the defendant receives notice of the specific response costs incurred for that period. Shell's position is based upon the

---

1. The Fifth Circuit acknowledged that the statute requires a written demand for specified response costs as a prerequisite to prejudgment interest. It further held that "[n]either the notices informing Sequa that generally the EPA would look to it for potential reimbursement 'at some future time,' nor the [record of decision] satisfy [the requirement of written demand for specified response costs.]" *In re Bell Petroleum Servs., Inc.,* 3 F.3d at 908.

2. The 1985 and 1990 amended complaints are identical in this prayer for relief with the exception of the last clause, which appears only in the 1990 amended complaint.

premise that a defendant should be able to "pay its bill" before interest begins to accrue.

The State has been seeking to recover response costs incurred at the RMA for the last ten years. Cleanup at the RMA will continue for the foreseeable future and the State likely will continue to seek recovery of response costs incurred. To protect its ability to recover prejudgment interest according to Shell's reading of the statute, the State would be required to make a series of monthly, weekly, or even daily demands for costs *already* incurred, enabling Shell and the United States to pay their "bills."[3] However, the statute does not create such a requirement, either implicitly or explicitly. It provides that before interest accrues, the costs must have been actually incurred and a written demand of a specific amount must have been made. However, the statute does not require that the costs be incurred *before* a written demand is made.

I conclude that the requirements of 42 U.S.C. § 9607(a)(4)(i) are satisfied when a plaintiff makes a written demand for recovery of any dollar amount. I find that the plaintiff made such a demand on the United States and Shell in its letter dated February 7, 1989. Accordingly, prejudgment interest for response costs incurred before February 7, 1989, will begin to accrue on February 7, 1989; prejudgment interest for response costs incurred after February 7, 1989 will begin to accrue on the date the costs were incurred; and the defendants' motion for partial summary judgment on the date interest begins to accrue will be denied.

## II. *DIMP–RELATED WORK.*

Plaintiff's claim includes costs incurred in responding to the release of diisopropyl methylphosphonate (DIMP) at the RMA. The parties have stipulated that DIMP is a "pollutant or contaminant" but not

a "hazardous substance," as those terms are defined in CERCLA, 42 U.S.C. § 9601(14) & (33). It is undisputed that there can be no recovery pursuant to 42 U.S.C. § 9607(a), for actions directed solely at pollutants and contaminants. *See, e.g., Eagle–Picher Indus. v. United States E.P.A.,* 759 F.2d 922, 932 (D.C.Cir.1985) ("Under section 107, 42 U.S.C. § 9607, the owner of a facility may be liable for cleanup of a release of a 'hazardous substance,' but not for the cleanup of a release of a 'pollutant or contaminant.'"). It is also undisputed that costs incurred from actions directed at hazardous substances are recoverable response costs. *See id.*

Plaintiff contends that it can recover costs incurred in responding to the release of DIMP for the asserted reason that once a party is found liable under § 9607(a), it is liable for all cleanup costs. Defendants concede that costs incurred from actions directed at hazardous substances are recoverable response costs even if the actions had the effect of assisting in the cleanup of pollutants and contaminants. They argue, however, that a discrete action that does not purposefully address hazardous substances does not give rise to response costs within the meaning of § 9607(a) simply because it is part of a larger cleanup program.

Section 9607(a)(4)(A) provides that a liable party is responsible for "all costs *of removal or remedial action* incurred by ... a State ... not inconsistent with the national contingency plan." (Emphasis added.) Thus, a liable party is not responsible for "all" costs, as the plaintiff asserts, but only costs "of removal or remedial action." The terms "removal" and "remedial action" are defined in 42 U.S.C. § 9601(23) and (24) as actions taken in response to the threatened or actual release of hazardous substances, to protect public health or otherwise clean up the environment.[4] The definitions clearly focus on

---

3. If the State were to make a single demand guessing at the total response costs for the duration of the cleanup, Shell clearly would object to paying for costs that had not yet been incurred. Because the response costs would remain reimburseable, interest would begin to accrue pursuant to subsection (ii), from the date of the expenditure concerned, once again making Shell liable for interest without first being handed a "bill."

4. "Removal" is defined in 42 U.S.C. § 9601(23) as:

the cleanup or removal of released *hazardous substances* from the environment, such actions as may be necessary taken [sic] in the event of the threat of release of *hazardous substances* into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of *hazardous sub-*

actions taken in relation to hazardous substances or "associated" contamination. Pollutants are not mentioned at all, nor are those contaminants not associated with hazardous substances. Thus, I conclude that the language in § 9607(a)(4)(A), when interpreted in accordance with the definitions in § 9601(23) and (24), dictates that response costs are available only when the response actions are directed at hazardous substances.[5] Accordingly, the plaintiff is not entitled to recover costs for DIMP-related work.

### III. RCRA ENFORCEMENT ACTIVITIES.

■ Plaintiff seeks costs associated with oversight of the defendants' cleanup activities and enforcement of the Colorado Hazardous Waste Management Act (CHWMA) at the RMA.[6] Defendants argue that these costs are not recoverable under 42 U.S.C. § 9607(a) because the plaintiff's purpose was to ensure compliance with state laws. Plaintiff responds that the source of regulatory authority is irrelevant to the question of recovery under § 9607(a).

Section 9607(a)(4)(A) merely requires that response costs be incurred (1) by the United States, a State or an Indian tribe, (2) in connection with a removal or remedial action, (3) that is not inconsistent with the national contingency plan. It does not require removal or remedial action pursuant to CERCLA. 42 U.S.C. § 9607(a)(4)(A), 9601(23) & (24); see also United States v. Rohm & Haas Co., 2 F.3d 1265, 1274 (3d Cir.1993) ("[N]either [section 107(a)] nor the definition of 'removal' contains CERCLA specific language.")

Defendants argue that the CHWMA and CERCLA are not co-extensive, and that the

---

stances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damages to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, action taken under section 104(b) of this Act [42 U.S.C. § 9604(b)], and any emergency assistance which may be provided under the Disaster Relief Act of 1974.

(Emphases added.) "Remedial action" is defined in 42 U.S.C. § 9601(24) as:

those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment. The term includes the costs of

permanent relocation of residents and businesses and community facilities where the President determines that, alone or in combination with other measures, such relocation is more cost-effective than and environmentally preferable to the transportation, storage, treatment, destruction, or secure disposition offsite of hazardous substances, or may otherwise be necessary to protect the public health or welfare; the term includes offsite transport and offsite storage, treatment, destruction, or secure disposition of hazardous substances and associated contaminated materials.

(Emphases added.)

5. Plaintiff argues that 42 U.S.C. § 9621(d) requires that the selected remedial action address the cleanup of pollutants and contaminants. However, § 9621(d) discusses only the degree of cleanup to be attained from an already selected remedial action. The general rules governing selection of a remedial action are found in § 9621(b), where it is provided that actions involving treatment that "permanently and significantly reduces the volume, toxicity or mobility of the hazardous substances, pollutants, and contaminants ... are to be preferred over remedial actions not involving such treatment." This section is not inconsistent with my holding, however, because an action that reduces hazardous substances, pollutants, and contaminants obviously is preferable to one that reduces only hazardous waste.

6. CHWMA is the State's delegated program for managing hazardous waste in lieu of the federal program under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901 et seq.

plaintiff's CHWMA costs should not be recoverable because the actions were not equivalent to removal or remedial actions as defined in 42 U.S.C. § 9601(23) and (24). The Tenth Circuit has recognized, however, that "CERCLA's definition of 'removal and remedial action' is conceivably broad enough to encompass certain RCRA corrective actions." *United States v. State of Colorado*, 990 F.2d 1565, 1580 (10th Cir.1993). Further, § 9607(a) begins, "Notwithstanding any other provision or rule of law," which indicates that recovery may be available under that section despite the applicability of other laws such as the CHWMA. *See Rohm & Haas*, 2 F.3d at 1274. Accordingly, I find and conclude that if the plaintiff's actions, taken pursuant to the CHWMA, independently meet the definition of "removal" or "remedial action" under § 9601(23) and (24), the resulting costs are recoverable as response costs pursuant to § 9607(a).

Defendants argue that the plaintiff's oversight activities at the RMA, taken pursuant to the CHWMA, do not fit within the definition of removal or remedial action, and therefore do not give rise to recoverable response costs. However, § 9601(25) provides that the terms removal and remedial action "include enforcement activities related thereto." The concept of enforcement necessarily encompasses oversight activities. *See State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1043 (2d Cir.1985).

The need for oversight activities to enforce removal and remedial actions is particularly acute in situations where the United States is a CERCLA defendant. If only the Environmental Protection Agency were granted oversight authority, the State would be forced to leave the interests of its people in the hands of a law enforcement agency with an inherent conflict of interest. There is no reason to believe that the United States is immune from the conflicts that arise when a liable party is responsible for enforcing its own cleanup activities. Thus, I find and conclude that the plaintiff's oversight activities may give rise to properly recoverable response costs pursuant to §§ 9607(a) and 9601(25).

Accordingly, IT IS ORDERED that:

(1) Defendants' motion for partial summary judgment on the date prejudgment interest begins to accrue is denied;

(2) Prejudgment interest for response costs incurred before February 7, 1989, will begin to accrue on February 7, 1989;

(3) Prejudgment interest for response costs incurred after February 7, 1989 will begin to accrue on the date the costs were incurred;

(4) Plaintiff is not entitled to recover costs associated with DIMP-related work;

(5) Plaintiff is entitled to recover costs for those actions taken pursuant to the CHWMA that independently meet the definitions of removal or remedial action pursuant to § 9601(23), (24), and (25);

(6) Oversight activities taken pursuant to the CHWMA may give rise to properly recoverable response costs; and

(7) The parties and their counsel are ordered to meet and confer within eleven days of this order in a good faith attempt to settle the case without further litigation, expense or delay. The parties shall report to this court in writing within fifteen days of this order, stating the results of their settlement negotiations and whether a conference before a Magistrate Judge or some other alternative dispute resolution proceeding would facilitate settlement.